Barbour, Ch. J. (dissenting).
The few general common-law rules touching the rights and obligations of carriers of persons and their passengers respectively, which were found necessary while the modes of carrying were restricted to sailing vessels upon the water, and wagons or stage-coaches on land, have not only become somewhat modified and greatly extended within the last half-century, but, as novel questions have arisen, it has been found necessary from time to time to establish new rules applicable only to particular classes of cases. For instance, it may now be considered as settled by numerous decisions, that carriers of passengers upon a railroad train, propelled by steam at a rapid rate of speed, are bound to exercise vigilance and care for the protection of their passengers, proportionate to the dangers to be guarded against, and that such carriers are required to exercise extraordinary care, vigilance, and caution, and not merely that ordinary care which carriers by coach were bound to exhibit. The principle of this rule of law is quite correct. The duty of the carrier is increased by the additional dangers to which his own method of transportation subjects his passengers, *208 and the greater helplessness of the latter. So, too, carriers by steamboat must see that their machinery is sufficient, and in good order, and managed by competent and skilful men.
Our street cars are propelled by horses at a moderate rate, keep upon their own track, are readily stopped, even if the horses become fractious or unmanageable, and are less easily overturned than a stage coach. No extraordinary care, therefore, is required in their management to secure the safety of persons carried by them.
Again: As passengers on shipboard are without power to protect themselves against aggression and personal annoyance, except by such acts as would be a breach of the proper discipline there, and cannot leave the ship, it is no doubt the duty of the master, who has all the necessary power, to protect each passenger who is in danger of suffering a personal injury from assault by another ; and so, perhaps, and for a similar reason, as to carriers on railroad cars propelled by steam (See liegeman v. 'Western railway, 3 Kern. 9). But that rule, it appears to me, is no more applicable to carriers by our street cars, than it is to innkeepers or carriers by stage coaches. For street car passengers are by no means helpless, nor necessarily dependent for-their personal protection upon the carrier, as they can easily cause the car to be stopped and leave the same together with the annoyance, and, if they choose, take another car. Carriers of that class discharge their obligation to “ carry safely” when the passenger is so transported as to remain uninjured because of some act of negligence, or want of care on the part of the carrier in regard to the construction or management of the vehicle or means of propulsion used, or of some wrongful act on the part of the employés. A carrier cannot be bound to fight for the safety of a passenger, who may protect himself, with but slight inconvenience, by leaving the car. In these *209 remarks I have spoken only of the duty of carriers in regard to the personal safely of their passengers. The question as to their duty to provide for and protect the comfort of such persons, is quite another matter, which in no wise concerns this case ; for, unless the plaintiff have established the fact that the defendants failed to perform their obligation to carry Mr. Putnam safely, including of course his descent from the car, there can be no recovery.
In this case, the evidence was sufficient to authorize a finding by the jury that Foster was intoxicated, and that he by a series of offensive and disgusting acts and remarks greatly insulted-and annoyed Mr. Putnam and the ladies under his charge, and that some, at least, of those offensive acts were witnessed by the driver of the car. Mr. Putnam, however, does not appear to have apprehended any personal injury or danger to himself or the ladies, nor did he call the attention of the conductor to the matter, or request his interference more than once, when he said, “Conductor, can’t you make this man be quiet?” whereupon the conductor said to Foster, “Sit down and be quiet.” After that, Foster sat down, and after sitting a short time, told Mr. Putnam in a low tone, “Before you leave this car I will give you hell;” but it does not appear that the conductor heard or could have heard that threat. The car was at about Thirty-fourth or Thirty-fifth Street when the threat was made, and Foster then went out upon the front platform, and Putnam shut the door after him, and thus things remained for about half a mile and until the car was stopped for Mr. Putnam at Forty-sixth Street. From these facts, considering them all, in their connection, it may be assumed that neither the conductor nor the driver supposed or had any reason to believe that the brutal and offensive conduct of Foster indicated an intention on his part at any time to make a personal attack upon Mr. Putnam, and also, that *210 after Foster had left the interior of the car and quietly remained for a long distance upon the front platform, no apprehension of personal violence from him could reasonably have been apprehended by any one unless Putnam himself and the lady who overheard Foster’s low-toned threat were exceptions. Besides, it clearly appears from the evidence that Mr. Putnam had, at least, all the knowledge touching the conduct and conversation of Foster that was possessed by the conductor and driver or either of them, and had quite as much reason for supposing that Foster designed to make a personal assault upon him as "those employés of the defendants could have had. If the death of Mr. Putnam can be said to have been occasioned by the negligence or want of care of any one, Mr. Putnam himself was .therefore chargeable with that negligence as fully, at least, as were the conductor and driver or the railroad company itself. For, he not only neglected to tell the conductor or driver of the threat which Foster, had made, or to ask their assistance and protection, but he took no precaution whatever to avoid or guard himself against an attack. In no view which can be taken of the duties and obligations of the carriers, therefore, can it be held that Mr. Putnam’s death was occasioned by the negligence of the defendants, without any negligence on the part of the former which contributed to the loss of his life.
For these reasons, the plaintiffs failed to establish their' right to recover upon the evidence, and it follows that the motion for a nonsuit ought to have been granted.
The judgment and order appealed from should be reversed, with costs, and a new trial directed.
Note.—The decision of the court in this case has been reversed by the Court of Appeals, opinion by Allen J. (not yet reported). The imper *211 tance of the case, and the general interest of the profession therein, warrants the above full report of the case in this court.
The Reporters.